UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

JEANNIE MORRIS                                    CIVIL ACTION

VERSUS                                            NO: 15-3366

CAPITAL ONE, N.A.                                 SECTION: "J"(4)

### ORDER AND REASONS

Before the Court is a *Motion for Summary Judgment* **(Rec. Doc. 18)** filed by Defendant, Capital One, N.A. ("Capital One"), an *Opposition* thereto **(Rec. Doc. 19)** filed by Plaintiff, Jeannie Morris. ("Plaintiff"), and a *Reply* **(Rec. Doc. 22)** filed by Capital One. Having considered the motion and legal memoranda, the record, and the applicable law, the Court finds that the motion should be **GRANTED**.

### FACTS AND PROCEDURAL BACKGROUND

Plaintiff owned a house at 544 Arlington Drive in Metairie, Louisiana. In 2003, she obtained a mortgage (the "first mortgage") from Hibernia National Bank ("Hibernia"). In addition, Plaintiff obtained a home equity line of credit from Hibernia, secured by her home. Hibernia eventually merged with Capital One, and Capital One became the owner of Plaintiff's first mortgage and line of credit. Plaintiff avers that she carried flood and homeowner's insurance on her home at all times.

1

In 2005, Hurricane Katrina struck New Orleans. Plaintiff's house was badly damaged. According to Plaintiff, her home suffered extensive mold damage, and rebuilding was not feasible due to her children's asthma. Plaintiff received insurance proceeds amounting to $255,416.32. Clauses in her first mortgage and line of credit agreements provided that insurance proceeds would be payable to the mortgagee. The relevant provision of the first mortgage stated:

> Unless Lender [Hibernia/Capital One] and Borrower [Plaintiff] otherwise agree in writing, any insurance proceeds . . . shall be applied to restoration or repair of the Property . . . . If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

(Rec. Doc. 18-1, at 3.) The pertinent provisions of the line of credit agreement stated:

> I [Plaintiff] agree to maintain insurance on the Property at my expense for as long as this Mortgage remains in effect. . . . I further agree that Mortgagee [Hibernia/Capital One] shall have the right to directly receive all proceeds payable under my insurance policies. Should I receive any such insurance proceeds, I agree immediately to turn such proceeds over and pay the same to Mortgagee. Mortgagee may apply such insurance proceeds at its sole option and discretion (after payment of all reasonable costs, expenses and attorneys' fees incurred by Mortgagee), for the purpose of (A) repairing, replacing or restoring the lost, stolen or damaged Property, or (B) reducing the outstanding balance of the Indebtedness, and repaying all Additional Advances that Mortgagee may have advanced on my behalf as provided under this Mortgage, together with interest thereon, in the manner provided under this Mortgage.

(Rec. Doc. 18-1, at 3-4.) The checks for Plaintiff's insurance proceeds were made payable to Plaintiff and Hibernia, the lender. Because Plaintiff opted not to repair her home, Capital One claims it was contractually entitled to apply the proceeds to the sums due under the first mortgage and line of credit.

Plaintiff knew that the proceeds would be insufficient to completely pay off her loans and that she would be unable to continue making payments because she did not earn much income after Katrina. Therefore, on March 13, 2006, Plaintiff sent a letter to Jeff Stevens at Capital One, proposing that Capital One deposit the proceeds into an interest-bearing escrow account in her name and Hibernia's name. She proposed that Capital One draft her monthly mortgage and line of credit payments from this account until the loans were paid in full. She estimated that the proceeds would be sufficient to satisfy her monthly payments for six years. In the letter, she stated that she hoped to sell her house by the end of the year. Capital One agreed to the accommodation but only on the condition that it expire after six months.

Over the next six months, Capital One withdrew Plaintiff's monthly mortgage payments as agreed by the parties. It also disbursed $30,000 from the account so Plaintiff could pay other debts. On September 6, 2006, Plaintiff sent another letter to Capital One, requesting an extension of the accommodation. Capital One agreed to a six-month extension according to additional terms.

3

As set out in Capital One's October 11, 2006 letter, the terms were:

> 1. A Brokers Price Option must be obtained from a disinterested third party licensed realtor ("Realtor") of the [Plaintiff's] choosing reflecting the Realtor's opinion with respect to the listing price of the Property.
> 2. The Property shall be listed with an active full time realtor for the amount of the Brokers Price Opinion.
> 3. Realtor must create and submit to Bank a marketing plan for the Property which is reasonably designed to result in a sale of the Property before February 15, 2007.
> 4. [Plaintiff] must insure that access to backyard is secured and pool is cleaned and maintained in compliance with city and/or parish regulations.

(Rec. Doc. 18-1, at 6.) Capital One emphasized, "If the Loans are not fully paid on or before February 15, 2007, the remaining [proceeds] will be posted to the balance due on the first mortgage." Plaintiff admitted in a deposition that she agreed to the conditions.

On March 15, 2007, Plaintiff sold her house for $390,000. The sale proceeds and the remaining insurance proceeds were sufficient to fully pay Plaintiff's debts owed under the first mortgage and line of credit agreements. Plaintiff received $14,160.76 in proceeds from the sale. In late 2014, Plaintiff first questioned Capital One's handing of the proceeds. On January 27, 2015, she filed suit in the District Court of Jefferson Parish. Capital One removed the case to this Court on August 7, 2015. (Rec. Doc. 1.) Plaintiff generally alleges that Capital One refuses to provide

4

explanations for the disbursements made from the escrow account. Plaintiff suggests that Capital One misappropriated funds from the account. Plaintiff also alleges that Capital One forced her to sell her home by threatening foreclosure.

Capital One filed the instant motion on March 8, 2016. (Rec. Doc. 18.) On March 15, Plaintiff opposed the motion. (Rec. Doc. 19.) The Court granted Capital One leave to file a reply memorandum on March 23. (Rec. Doc. 22.)

## **PARTIES' ARGUMENTS**

In its motion, Capital One argues that Plaintiff's claims should be dismissed in their entirety. First, Capital One asserts that Plaintiff's complaint essentially seeks an accounting of the funds in the joint account. Capital One claims that it provided Plaintiff with a chart explaining each disbursement from the account. Further, Capital One argues that its corporate representative, Alan Baxter, explained all disbursements in his deposition, including the specific disbursements questioned by Plaintiff. Thus, Capital One claims that all evidence shows that it does not owe Plaintiff any money.

Second, Capital One addresses Plaintiff's suggestion that it forced her to sell her home and threatened foreclosure. To controvert this allegation, Capital One points to letters and deposition testimony from Plaintiff in which she expressed an interest in selling her home by the end of 2006. Capital One argues

5

that the evidence shows that Plaintiff agreed to the accommodation, not that Capital One forced her to sell her home. Further, Capital One argues that Plaintiff's petition did not contain sufficient allegations to state a cognizable legal theory based on the alleged threats of foreclosure. Even if Plaintiff did allege such a claim, Capital One argues that Plaintiff cannot prove her claim because it was based on an unenforceable, unwritten credit agreement. Finally, Capital One asserts that Plaintiff cannot prove causation or damages. Thus, Capital One requests that summary judgment be entered in its favor.

In her opposition, Plaintiff raises several disputed issues of material fact. First, Plaintiff contends that she could have obtained a better price for her house if Capital One had granted her an additional year to sell it. Plaintiff claims that comparable homes in her subdivision sold for between $452,000 and $650,000 in 2008. Plaintiff also alleges that Capital One failed to explain why certain amounts were withdrawn from the account. Further, Plaintiff claims that Capital One confirmed in a letter that her home was worth $400,000 to $410,000 in its post-Katrina state. When the value of the home was combined with the escrow account, Plaintiff claims that Capital One held $610,000 as collateral for her loans. Thus, she argues that Capital One acted in bad faith by refusing to grant her an additional year to sell her home. Finally, Plaintiff claims that Capital One forced her to sell her home

6

because it stated that her escrow funds would be used to pay her loans if she did not sell by February 2007. Plaintiff knew that she would not be able to pay the remaining balance, so her home would be subject to foreclosure. Thus, she claims that Capital One forced her to sell her home.

    Capital One filed a reply memorandum. First, it argues that Plaintiff failed to address its arguments that her "forced sale" claim is based on an unenforceable oral contract. Capital One avers that her claim fails as a matter of law. Second, Capital One argues that Plaintiff's opposition failed to raise any genuine issues of material fact. Specifically, Capital One contends that Plaintiff did not definitively know in 2006 that her property value would increase. Further, Capital One points out that it did not receive any consideration for entering into the escrow arrangement and that Plaintiff confirmed this in her deposition. Next, Capital One contends that its chart fully explains each disbursement from the escrow account and that Plaintiff failed to introduce any evidence showing it misappropriated funds. Capital One also argues that Plaintiff may have felt forced to sell her home but that it did not demand that she do so. Finally, Capital One contends that the loan documents clearly allowed it to apply the insurance proceeds to her outstanding loan balance. It claims that it did not have a duty to allow Plaintiff to continue to make payments from the insurance proceeds.

**LEGAL STANDARD**

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing former Fed. R. Civ. P. 56(c)); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008). All reasonable inferences are drawn in favor of the nonmoving party, but a party cannot defeat summary judgment with conclusory allegations or unsubstantiated assertions. *Little*, 37 F.3d at 1075. A court ultimately must be satisfied that "a reasonable jury could not return a verdict for the nonmoving party." *Delta*, 530 F.3d at 399.

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'" *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263-64 (5th Cir. 1991) (citation omitted). The nonmoving party can then defeat the

motion by either countering with sufficient evidence of its own, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for trial. *See, e.g., id.* at 325; *Little*, 37 F.3d at 1075.

## **DISCUSSION**

As a preliminary matter, the Court notes that Plaintiff's complaint does not allege any specific cause of action. However, as the Court interprets it, Plaintiff alleges two main complaints: (1) Capital One misappropriated funds in the escrow account and (2) Capital One forced Plaintiff to sell her home by threatening foreclosure. The Court will discuss each contention in turn.

**I.   Misappropriation of Funds**

Plaintiff's complaint fails to specify the law under which her misappropriation claim arises. However, the Court finds that Capital One is entitled to summary judgment because Plaintiff's misappropriation claim has prescribed. Further, even if Plaintiff's claim were not time barred, the Court finds that Plaintiff failed to show a genuine issue of material fact.

First, Louisiana courts classify misappropriation claims as delictual actions for conversion. *Sanderson v. First Nat'l Bank of Commerce*, 723 So. 2d 1036, 1038 (La. Ct. App. 1998), *writ denied*, 738 So. 2d 7 (La. 1999) ("The courts have uniformly considered actions against banks for wrongful transfer or disposition of account funds as conversion actions.") (citing *Williams v. Bank of La. in New Orleans,* 454 So. 2d 1138, 1139 (La. Ct. App. 1984), *writ denied,* 460 So. 2d 611 (La. 1984); *Labbe v. Premier Bank,* 618 So. 2d 45, 46 (La. Ct. App. 1993); *Hampton v. Hibernia Nat'l Bank,* 598 So. 2d 502 (La. Ct. App. 1992); *Patterson v. Livingston Bank,* 509 So. 2d 6, 7 (La. Ct. App. 1987)). Alternatively, a misappropriation claim may sound in breach of fiduciary duty. *Matthews v. Bank One Corp.*, 25 So. 3d 952, 955 (La. Ct. App. 2009) (claim for unauthorized withdrawal of funds from an account constitutes an action in conversion or for breach of fiduciary duty).

In Louisiana, delictual actions are subject to a one-year prescriptive period. La. Civ. Code art. 3492. Prescription begins to run on the day the injury or damage occurs. *Id.* A breach of fiduciary duty claim against a financial institution also prescribes after one year. La. Rev. Stat. § 6:1124.[1] Prescription is a peremptory exception, which may be pleaded "at any stage of the proceeding in the trial court prior to a submission of the case for a decision." La. Code Civ. Proc. art. 928. "The court may not supply the objection of prescription, which shall be specially pleaded." La. Code Civ. Proc. art. 927. In this case, Capital One plead the exception of prescription in its answer filed in the state court, before the matter was removed to this Court. Thus, Capital One's prescription arguments are properly before this Court. Because misappropriation is subject to the one-year prescriptive period and Plaintiff waited almost eight years to file suit, the Court finds that her misappropriation claim has prescribed.

---

[1] Plaintiff did not specifically allege that Capital One breached its fiduciary duties. However, to the extent she did, "Louisiana law specifically provides that financial institutions do not owe a fiduciary obligation or responsibility to customers, unless there is a specific written agency or trust agreement by which the financial institution agrees to act and perform in the capacity of a fiduciary." *Gulf Coast Bank & Trust Co. v. Warren*, 125 So. 3d 1211, 1220 n.8 (La. Ct. App. 2013) (citing La. Rev. Stat. § 6:1124; *Seals v. Omni Bank Ins. Companies*, 104 So. 3d 667, 674 (La. Ct. App. 2012)). Plaintiff did not demonstrate the existence of such an agreement.

11

Further, the Court finds that Plaintiff failed to demonstrate a genuine issue of material fact on her misappropriation claim. A conversion action is "grounded on the unlawful interference with the ownership or possession of a movable." *Dual Drilling Co. v. Mills Equip. Investments, Inc.*, 721 So. 2d 853, 857 (La. 1998). "A conversion is committed when any of the following occurs: 1) possession is acquired in an unauthorized manner; 2) the chattel is removed from one place to another with the intent to exercise control over it; 3) possession of the chattel is transferred without authority; 4) possession is withheld from the owner or possessor; 5) the chattel is altered or destroyed; 6) the chattel is used improperly; or 7) ownership is asserted over the chattel." *Id.* The uncontroverted evidence shows that Capital One did not acquire Plaintiff's money "in an unauthorized manner" or transfer possession of it without authority.

Plaintiff attempts to create a genuine issue of material fact by citing to selections of the deposition of Alan Baxter, Capital One's corporate representative. She claims that Baxter could not explain why the amount of her payments varied from month to month. However, Baxter clearly stated in his deposition that the amount of her payments fluctuated depending on how much she had borrowed from her line of credit in a given month. (Rec. Doc. 18-6, at 11-12) ("The second mortgage could vary based on the fact that it was

a line of credit. So based on what the principal balance was at the time, the payment could fluctuate.").

Plaintiff also contends that Baxter could not explain what "ACCR adjustment" meant. Baxter stated that he did not know what the phrase meant, but he could tell Plaintiff that it did not represent a payment and did not affect her principal balance. *Id.* at 19-20. Plaintiff also argues that Baxter could not explain the phrases "discount added" and "increase used balance." However, Plaintiff does not demonstrate that these codes were used to deduct additional money from the escrow account. Finally, Plaintiff argues that Baxter could not explain where the balance of a $5,022.86 payment was applied. Baxter testified that $4,189.32 was applied to Plaintiff's loan payments. *Id.* at 11. However, Capital One's documents show that the $5,022.86 payment included an $833.54 payment on Plaintiff's line of credit, as well as a $4,189.32 payment on her first mortgage. (Rec. Doc. 18-4, at 13.) Therefore, Plaintiff failed to show a genuine issue of material fact as to the disbursements from the escrow account. Capital One is entitled to summary judgment on this claim.

**II. Forced Sale and Bad Faith**

Capital One is also entitled to summary judgment on Plaintiff's forced sale and bad faith claims. As with her first claim, Plaintiff failed to articulate whether her alleged rights arise from tort law, contract law, or another source. However, the

13

Court finds that Plaintiff failed to show a genuine issue of material fact, no matter what the substance of her claim is.

Assuming Plaintiff's claim is based on tort, it has prescribed, as described above. If Plaintiff's claim is based in contract, Plaintiff must show that Capital One failed to perform an obligation it owed to Plaintiff:

> Generally, Louisiana law governing obligations provides that good faith shall govern the conduct of parties in whatever pertains to the obligation, and all contracts in Louisiana must be performed in good faith. . . . Louisiana does not recognize a separate and distinct obligation of good faith, the breach of which would be equivalent to a breach of the contract between the parties. The performance of an obligation or contract can be characterized as being in good faith or bad faith, but the party alleging bad faith performance must first allege facts revealing the duty to perform an obligation. . . . Thus, judicial determination of good-faith (or bad-faith) failure to perform a conventional obligation is always preceded by a finding that there was a failure to perform, or a breach of the contract.

*Gulf Coast Bank & Trust Co.*, 125 So. 3d at 1219 (internal quotation marks omitted). Plaintiff failed to establish that Capital One breached its contract with Plaintiff. Instead, Plaintiff repeatedly avers that Capital One forced Plaintiff to sell her home and that it did so in bad faith. Without a breach of an underlying obligation, Capital One's alleged bad faith is irrelevant.

Further, the uncontroverted facts show that Capital One did not force Plaintiff to sell her home or breach the contract in any way. In fact, the mortgage contracts authorized Capital One's

14

actions. The first mortgage agreement provided: "If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower." (Rec. Doc. 18-1, at 3.) Plaintiff argues that Capital One's security would not be lessened because the housing market improved one year after she sold her home. Even if this is true, Plaintiff earlier conceded that restoration of her home was not feasible. (Rec. Doc. 18-5, at 16.) Thus, the contract entitled Capital One to apply the insurance proceeds to the outstanding balance owed. The line of credit also authorized a similar arrangement: "Mortgagee may apply such insurance proceeds at its sole option and discretion . . . for the purpose of . . . reducing the outstanding balance of the Indebtedness . . . ." (Rec. Doc. 18-1, at 3-4.) Thus, the evidence shows that Capital One did not breach the agreements, making its purported bad faith irrelevant.

The evidence also shows that Capital One did not force Plaintiff to sell her home. Plaintiff decided not to rebuild her home due to her children's asthma and the extensive mold damage. Also, Plaintiff testified that her income was reduced after Katrina, and she would not be able to afford her mortgage payments. It seems Plaintiff wished to continue to use the insurance proceeds to pay off her mortgage for an indefinite time. However, Capital

15

One, acting in accordance with the contract, opted to apply the proceeds to the outstanding balance. Capital One was not obligated to allow Plaintiff to use her insurance proceeds to pay her debts. It accommodated her request to do so for one year so Plaintiff could have time to sell her house. In fact, in her letter to Capital One proposing the accommodation, Plaintiff stated that her intent was to sell her home by the end of 2006. (Rec. Doc. 18-4, at 44.) While Plaintiff may have felt forced to make that decision, Capital One did not force the sale. It merely exercised its contractual rights. Therefore, no genuine issues of material fact exist, and Capital One is entitled to summary judgment on Plaintiff's forced sale and bad faith claims.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Capital One's *Motion for Summary Judgment* is **GRANTED**.

New Orleans, Louisiana this 29th day of March, 2016.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE